UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
APR 22 2022
Clerk, U.S. District and
Bankruptcy Courts

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| v. | : | Case No. 1:21-cr-657(2) (BAH) |
| JAMES PHILLIP MAULT, | : | |
| Defendant. | : | |

## SUBMISSION BY THE UNITED STATES IN SUPPORT OF GUILTY PLEA

Pursuant to a written plea agreement, dated March 3, 2022, and signed by the defendant, James Phillip Mault (the "defendant") and his counsel, the defendant agreed to plead guilty to Assaulting, Resisting, or Impeding Certain Officers or Employees, in violation of 18 U.S.C. § 111(a)(1), a lesser-included offense in Count Five of the Indictment.

The plea agreement was entered pursuant to Fed. R. Crim. P. 11(c)(1)(A), as the defendant intends to plead guilty to a lesser-included offense in Count Five of the Indictment, and, in consideration of such guilty plea, the government will move to dismiss the remaining counts of the Indictment and will not further prosecute the conduct set forth in the Statement of Offense.

I. **Charged Offenses**

The defendant is charged in the Indictment with eight offenses:

Count Three: Civil Disorder, in violation of Title 18, United States Code, Section 231(a)(3);

Count Five: Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of Title 18, United States Code, Sections 111(a)(1) and (b);

Count Six: Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2;

Count Seven: Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of Title 18, United States Code, Section 1752(a)(1) and (b)(1)(A);

Count Eight: Disorderly and Disruptive Conduct in a Restricted Building or Grounds with

a Deadly or Dangerous Weapon, in violation of Title 18, United States Code, Section 1752(a)(2) and (b)(1)(A);

Count Nine: Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of Title 18, United States Code, Section 1752(a)(4) and (b)(1)(A);

Count Ten: Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D); and,

Count Eleven: Act of Physical Violence in the Capitol Grounds or Buildings, in violation of Title 40, United States Code, Section 5104(e)(2)(F).

## II. Elements of the Offenses

To prove that the defendant is guilty of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1), the government must prove the following beyond a reasonable doubt:

    a. That the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with any officer or employee of the United States or of any agency in any branch of the United States Government;

    b. That the defendant did so with some use of force;

    c. That the defendant did so while the officer or employee was engaged in or on account of the performance of official duties; and,

    d. That the assault involved physical contact with the victim or the intent to commit another felony.

## III. Maximum Penalties

The maximum penalties for Assaulting, Resisting, or Impeding Certain Officers are:

    a.    A term of imprisonment of not more than eight years;

    b.    A term of probation or supervised release of not more than three years;

    c.    A fine not to exceed $250,000;

   d.   A special assessment of $100; and,

   e.   An obligation to pay any applicable interest or penalties on fines and restitution not timely made.

**IV.   Sentencing Guidelines**

For Count Five of the Indictment, United States Sentencing Guidelines (U.S.S.G.) Section 2A2.2(a) provides a base offense level of 14. Because the defendant used a dangerous weapon, chemical spray, U.S.S.G. § 2A2.2(b)(2) applies a four-level enhancement. In addition, because Officer M.A. is an official victim, U.S.S.G. § 3A1.2 applies a six-level enhancement. With a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the parties have agreed that the Estimated Offense Level will be at least 21.

Based upon the information now available to the government, the defendant has a 2018 conviction for Driving While Intoxicated, but no other criminal convictions eligible for inclusion in the Criminal History Category calculation under U.S.S.G. § 4A.1. He is estimated to have a Criminal History Category of I. Accordingly, the defendant's estimated Sentencing Guidelines range is 37 months to 46 months. In addition, pursuant to U.S.S.G. § 5E1.2, should the Court impose a fine, at Guidelines level 21, the estimated applicable fine range is $15,000 to $150,000.

**V.   Proffer of Evidence**

The following statement of facts does not purport to include all of the defendant's illegal conduct. It is intended to represent sufficient information for the Court to find a factual basis for accepting the defendant's guilty plea.

Had this case proceeded to trial, the government's evidence would have established beyond a reasonable doubt that:

3

### *The Attack on the U.S. Capitol on January 6, 2021*

The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public. On that day, a joint session of the United States Congress convened at the United States Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the

building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

*James Phillip Mault's Participation in the January 6, 2021 Capitol Riot*

From at least January 2, 2021 through January 5, 2021, defendant James Phillip Mault and his co-defendant, Cody Mattice, discussed plans to travel to Washington, D.C. by text message.

On January 2, 2021, the two exchanged messages about when to leave New York. On January 3, 2021, the defendant told Mattice that he bought "pepper spray and a legal baton," which he would drop off to Mattice; Mattice replied "Yoooooo!!!! That's fucking dope!!" On January 5, the defendant texted Mattice and others to recommend bringing gear on their trip: "Long sleeves Gloves Knife Baton Pepper spray Asskicking boots Helmet Eye protection." Mattice replied "Fuck yea bro." Another member of this group text message thread suggested of bringing "extra layers for some padding" and a "prison trick" of stuffing "magazines in my jacket to stop knives."

On January 6, 2021, the defendant traveled from his home near Rochester, New York to Washington, D.C. to attend the former President's rally. He traveled with his friend and co-defendant Cody Mattice and with several other people. After the former President's rally, the defendant, Mattice, and other members of the crowd marched on the United States Capitol. On January 6, 2021, Mattice carried a video camera, which he used to record videos of himself, the defendant, and others. On the National Mall, within about one block from the National Museum of African American History and Culture, Mattice recorded himself saying "We're getting ready to go march on Capitol Hill. We're gonna go fuck some shit up. It's about to be nuts." A moment later, he added "let's do this. Let's fucking do this. I can't wait." As Mattice said this, the defendant stood nearby.

After arriving on Capitol Hill, Mattice recorded another video in which he said, as he and the defendant approached the Capitol, "Here we are, Capitol Hill. We're getting up front, and we're taking this shit. Make no mistake, over 1,000,000 fucking people here. Done. Done." As Mattice said this, the defendant walked next to him.

By approximately 12:55 p.m., a crowd of rioters had breached a police line at the Peace Circle, west of the Capitol Building, and advanced into the Capitol Building's West Plaza, which

is on the ground level. Between approximately 12:55 p.m. and 2:30 p.m., officers with the U.S. Capitol Police and the Metropolitan Police Department attempted to maintain a perimeter that would prevent rioters from advancing deeper into the Capitol grounds and, ultimately, into the Capitol Building. During the time between 12:55 p.m. and 2:30 p.m., the defendant and Mattice arrived on the Capitol Grounds and advanced, within the crowd, to the police perimeter in the West Plaza. There, the defendant implored police officers to join or ally with the rioters. Mattice recorded the defendant telling officers "Your jobs will be here when you come back after we kick the shit out of everyone." Later, during the same ongoing conversation, the defendant told the officers, "This shit's fucking right. What we're doing is right, or there wouldn't be this many fucking people here. And you guys fucking know this shit."

At around 2:30 p.m., in the Capitol's West Plaza, while the defendant stood nearby, Mattice pulled down one segment of the metal barricades that stood in front of a police line. Mattice quickly grabbed it with both hands, pulling it away from the police and onto the ground. A short time later, rioters overwhelmed the police line, forcing police officers to retreat through that central staircase, up to the Lower West Terrace—an exterior area on the western side of the Capitol grounds, one floor above ground level, where portions of the inauguration stage had been constructed. The defendant and Mattice were part of the group that assaulted the police line. They stood at or near the front of the group, pushing forward against the officers who attempted to keep the rioters from advancing. After the defendant, Mattice, and other rioters breached the police line, rioters seized control of the West Plaza, and a group of them climbed the stage to the Lower West Terrace. Shortly thereafter, police officers would retreat into the Lower West Terrace tunnel, where they would sustain hours of violent attacks by members of the mob—including the defendant's and Mattice's attacks at around 4:05 p.m.

At around 4:00 p.m., the defendant and Mattice approached Lower West Terrace tunnel. The crowds were thick, and Mattice first attempted to push through the crowd, then climbed up and over members of the crowd. Over the course of about a minute, Mattice crawled across the top of the crowd and toward the tunnel. Moments later, the defendant joined Mattice in crawling across the crowd, toward the tunnel. As they approached, other rioters were visibly throwing objects and spraying chemical spray at the law enforcement officers in the tunnel, and one rioter was hanging off the arch that had been constructed at the mouth of the tunnel, kicking at officers and using a metal pole as an improvised spear to stab at them. Members of the crowd chanted "Fight for Trump" and "Pull them [the officers] out."

After Mattice and the defendant reached the tunnel archway, Mattice turned to his right, reached toward the outstretched hand of another rioter, and grabbed a small object which appeared to be a canister containing chemical spray. He appeared to pass the item from his right to left hand, then reached out, across the defendant body with his left arm extended, and sprayed chemical spray at Officer M.A. and other police officers defending the tunnel. He held his thumb on the canister, discharging chemical spray at police officers for about ten seconds. Then, a short time later, he fell backwards into the crowd.

After Mattice fell from the tunnel arch, the defendant obtained a small canister containing chemical spray from another member of the crowd. The defendant extended his left arm into the tunnel and sprayed chemical spray at Officer M.A. and other police officers defending the tunnel. He appeared to hold his thumb on the canister for about five seconds, attempting to discharge chemical spray. The canister did initially discharge spray at officers. Thereafter, it appeared not to do so, and may have been empty. Moments later, again for about five seconds, the defendant attempted to discharge chemical spray at officers; again, the canister appeared not to discharge.

After this, another rioter climbed onto the tunnel arch, over the defendant. The defendant obtained a second, pink canister from the crowd and passed this canister to the other rioter, who used it to attack officers in the tunnel with chemical spray.

Officer M.A. was an officer from the Metropolitan Police Department (MPD). He and other MPD officers were assisting the United States Capitol Police in their defense of the Capitol Building and its grounds, and was present in the Lower West Terrace tunnel at approximately 4:05 p.m. At the time the defendant and Mattice sprayed chemicals into the tunnel, Officer M.A. occupied an elevated position on the tunnel's side and was one of the officers who they targeted with chemical spray. When the defendant deployed chemical spray at Officer M.A. and others, he knew that the officers were engaged in the performance of official duties.

Respectfully Submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By: */s/ Jordan A. Konig*
JORDAN A. KONIG
Trial Attorney, U.S. Department of Justice
Detailed to the U.S. Attorney's Office
For the District of Columbia
P.O. Box 55, Washington, D.C. 20044
202-305-7917 (v) / 202-514-5238 (f)
Jordan.A.Konig@usdoj.gov

*/s/ Michae J. Romano*
MICHAEL J. ROMANO
Trial Attorney, U.S. Department of Justice
Detailed to the U.S. Attorney's Office
For the District of Columbia
601 D Street N.W., Room 5.1510
202-252-7154
michael.romano2@usdoj.gov