UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

    v.                                        Case No.  21-cr-657 BAH

JAMES MAULT

### **DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

    Comes now the defendant, by and through his attorney, Richard S. Stern, to respectfully move this Honorable Court to sentence Mr. Mault a reasonable below guidelines sentence with appropriate conditions.

    As grounds therefore, we state as follows:

    1.    On April 22, 2022, the defendant pled guilty to a lesser-included offense in Count Five of the Indictment, pursuant to a written plea agreement and Rule 11(c)(1)(B). The defendant understands a conviction of 18 USC §111(a)(1) carries a maximum sentence of eight years' imprisonment; a fine of $250,000; a term of supervised release of not more than three years; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made. The defendant also agreed to pay restitution in the amount of $2,000.00 and a $100 special assessment.

    2.    All parties agreed that the defendant was an average participant, did not obstruct justice and accepted responsibility.

    3.    All parties agreed that under the guidelines, Mr. Mault was at level 21 and a criminal history category 1, for a guideline sentencing range of range of 37 to 46 months.  We seek a variance below the bottom of the guideline sentence because of the stress from his harsh terms of confinement, the defendant's multiple military terms and his resultant PTSD.

4.      His only prior record was for a 2018 conviction for Driving While Impaired.  He pled guilty and successfully completed the required seven-week driver awareness course. He then later came to realized he was an "alcoholic", drinking to the intention of getting drunk and drank alcohol daily after his return from deployment in 2014.   However, he has been sober for over two years. He last consumed alcohol on February 26, 2020 when he voluntarily went to the Veterans Outreach Center in Rochester, New York for an Alcoholics Anonymous meeting, which changed his life. The defendant attended one meeting, and there was no follow-up treatment after that. He denied any other prior enrollment in substance use treatment programs, but more importantly, he did not drink alcohol again since then.

5.      Before January 6, 2021, Mr. Mault lived a fairly normal life.  He was married, had two very young children and worked as a union iron worker in upstate New York.  It was his intention to just go the Rally that day.   He did well as an iron worker with regular increases in pay every year.

6.      Before that Mr. Mault had honorably served in the Army for two terms and volunteered for the National Guard in New York.  He was initially enlisted in the US Army from 2012 until he was honorably discharged from active duty in 2016. His highest rank and rank at separation was Sergeant. He thereafter joined the National Guard from 2016 until he was discharged honorably in 2020; his highest rank was a specialist. In May 2021, the defendant re-enlisted in the US Army. He was a specialist—team leader. His military decorations/awards include Army Achievement (four times), Good Conduct (two times), Good Conduct Overseas Deployment, and Army Accommodation.

7.      Mr. Mault was originally charged in a five count indictment.  The negotiations between counsel went very smoothly and once agreed upon, the only issues were getting the

signatures of out of town defendants and the logistics of getting two defendants who were in incarcerated in different facilities. There was no prior offer that was more favorable.

8. Once the plea was agreed upon, this Court accepted his plea after fully reviewing all the terms of the agreement and of facts. Mr. Mault accepted all terms of the plea before this Court without contesting or minimizing any fact presented at the plea hearing.

9. Mr. Mault was originally charged in counts 3 and 5-11 in an 11-count Indictment charging him with Civil Disorder, in violation of 18 USC § 231(a)(3) (Counts Three); Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 USC §§ 111(a)(1) and (b) (Count Five); Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 USC §§ 1512(c)(2) and 2 (Count Six); Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 USC §§ 1752(a)(1) and (b)(1)(A) (Count Seven); Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 USC §§ 1752(a)(2) and (b)(1)(A) (Count Eight); Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 USC §§ 1752(a)(4) and (b)(1)(A) (Count Nine); Disorderly Conduct in a Capitol Building, in violation of 40 USC § 5104(e)(2)(D) (Count Ten); and Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 USC § 5104(e)(2)(F) (Count Eleven).

10. Mr. Mault has substantial support in the community as evidenced by the number of supporters who have written letters on his behalf. All speak well of him as to his honesty and integrity as well his performance as a soldier. They are from a varied group of individuals who have met Mr. Mault at different times and under different circumstances.

    a. Exhibit 1 is a letter from his wife.

    b. Exhibit 2 is letters from his high school wrestling coach and his 8th grade English teacher.

    c. Exhibit 3 is letters from three people who knew him when he was growing up

    d. Exhibit 4 is letters from five people who have known him in the military.

11. Mr. Mault is married with two children who miss him very much. The case has been a tremendous strain on the family as his wife has now had to become the sole support of the family without Mr. Mault's contributions an iron worker and a soldier in the Army. She has had to work two jobs to survive and then be away from her children much more than she ever expected to be. Mr. Mault feels incredible guilt and remorse that his family has been put through all of this, especially since enlisted in the Army so that this would not happen.

12. While in prison Mr. Mault has attended bible study classes. Attached hereto are five certificates he received at the jail in Orange, VA. See Exhibit 5.

13. Mr. Mault was first contacted by the FBI about 12 days after the matters before this court and he spoke to them and did not assert any rights to which he would be entitled. He spoke to them again after he was arrested. He was ordered to see his commanding officer that morning at 5 a.m. to which reported and was arrested at that point.

14. After the January 18, 2021 meeting with the FBI, he thought the matter was over and resolved as he did not hear back from them. But in any case, he could no longer support his family once the Union found about his involvement and he saw the only way to reasonably support his family and pregnant wife was to re-join the Army, where he and his family would get medical care. Not only was his wife pregnant, but had other medical issues that require

substantial medical attention. The younger child will turn one soon and the other child is three years old.

15. When he joined the Army, it further strengthened his understanding that he was not a target for the January 6 matters as the Army did a background check on him and found nothing amiss. He was concerned about having the January 6 matter preventing from joining the Army and was relieved it was not.

16. Mr. Mault has had great remorse for the event of the day and even expressed it in a text two days after they left the Capitol, on January 8, 2021. In a text to the co-defendant, Mr. Mault realized the gravity of what happened then and stated: I can handle the future its just coping with the sh** I did.

17. Before the going to the Capital that day, whether rightly or wrongly, it was Antifa that he feared as he had herd that they were a violent organization against whom he had to protect himself and the people he went to Washington with. He even spoke about Antifa on texts before he got there that day. He never intended to have conflict with the police and did not expect to walk to the Capitol.

18. Mr. Mault wants all parties to know that he had no training in the army that was used in on January 6th and he was never trained by the army to be part of mob or demonstration. The Army in no way prepared him for the events of that day.

19. The conditions of Mr. Mault's incarceration have been difficult in the age of Covid. He has been housed in the Central Virginia Regional Jail since he arrived in the area, although the prison is about 90 miles from the Court. He was falsely branded as a white supremacist simply because of his charges at the Capitol, and had to be separately incarcerated for his own safety. When later in population, he has been restricted to his block and, at best, gets one

or two hours of outdoor activity a week and often less. He has had no personal visits from his family because of the distance involved.

20. The Court carefully reviewed the allegations in the statement of facts with Mr. Mault at the time of his plea and he admitted the allegations with no explanation, pause or excuse. Thus, Mr. Mault has complied with his obligations under the plea agreement and nothing has been further asked of him by the government. The presentence writer determined he had accepted responsibility and no objection was made any party.

21. We move that no financial penalty be ordered in this case (other than the agreed upon restitution of $2,000.00 and the special assessments) as the presentence writer has determined the defendant does not have sufficient funds to pay. The presentence writer stated that there were assets, the need for him to support his two minor children, and the agreed-upon restitution in this case, the defendant does not appear to have the ability to pay a fine.

22. The mental stress on Mr. Mault has been very harsh. Mr. Mault at age 22, while enlisted in the military, was diagnosed with Post-Traumatic Stress Disorder (PTSD), anxiety, and depression. The diagnosing physician attributed his PTSD to his experience in the military and from when the defendant witnessed a fatal vehicular accident when he was 18 years old. The jail put him on medication. The presentence writer stated the following:

"Medical records received from CVRJ included the followed mental health records. During an evaluation in January 2022, the defendant reported he received his first mental health treatment while deployed to Kuwait in 2013. More recently, he was seen in the Veterans Outreach in Rochester, New York. During the evaluation, the defendant presented for mood, anxiety, stress, and sleep deprivation. He reported high levels of stress in the jail environment that were making his depression and anxiety worse—his "tolerance level for stress ha[d] been stretched thin and [he had] a hard time controlling [his] anxiety." He had negative thoughts of hurting himself in the past but denied any currently. The defendant reported some suicidal ideation following the instant offense. He denied acting on the thoughts in any way and reported no thoughts before or since. During an appointment with medical staff on March 29, 2022, the defendant reported feeling better after starting his medication treatment. He takes his medications in the afternoon so as not to affect his sleep. He was to follow-up in 90 days or as

needed. Currently, the defendant is prescribed generic Wellbutrin. An unspecified mood (affective) disorder is noted. No other mental health conditions were noted."

23.  We join in the co-defendant's analysis as to comparable January 6th cases.  See ECF 62, page 7-10.

24.  In sum, we submit that given all the above, a variance is warranted because of the stress from his harsh terms of confinement, the defendant's multiple military terms and his resultant PTSD.

WHEREFORE, we pray that the Court order a below guideline sentence based on all the above facts with any and all conditions it deems appropriate.

Respectfully submitted,

/s/ Richard S. Stern
_____
RICHARD S. STERN
D.C. Bar No. 205377
932 Hungerford Drive #37A
Rockville, MD 20850
301-340-8000
Email:  rssjrg@rcn.com
Attorney for Mr. Mault

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have electronically served all counsel of record on July 4, 2022.

/s/ Richard S. Stern
_____
RICHARD S. STERN